**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC, | Civil Action No._____ |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| SONUS NETWORKS, INC. | |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Marking Object Virtualization Intelligence, LLC ("MOV Intelligence" or "Plaintiff"), by and through its attorneys, brings this action and makes the following allegations of patent infringement relating to U.S. Patent Nos.: 6,510,516 ("the '516 patent"); 7,650,418 ("the '418 patent"); and 7,124,114 ("the '114 patent") (collectively, the "patents-in-suit" or the "MOV Intelligence Patents").  Defendant Sonus Networks, Inc. ("Sonus Networks" or "Defendant") infringes each of the patents-in-suit in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq.*

### INTRODUCTION

1.      MOV Intelligence and its wholly-owned subsidiary, MOV Global Licensing LLC ("MOV Global Licensing") pursue the reasonable royalties owed for Sonus Networks' unauthorized use of patented groundbreaking technology both here in the United States and throughout Europe.

2.      Rovi Corporation ("Rovi") [1] is a pioneer and leader in protecting computer technology, including digital rights management ("DRM") and digital watermarking systems.

---

[1] On April 29, 2016, Rovi Corporation acquired TiVo, Inc. The combined company operates under the name TiVo, Inc.

Rovi assigned MOV Intelligence rights to over 233 patents including many of John O. Ryan's, the founder of Rovi predecessor Macrovision, groundbreaking patents.[2]

**THE PARTIES**

**MARKING OBJECT VIRTUALIZATION INTELLIGENCE, LLC**

3.       Marking Object Virtualization Intelligence, LLC ("MOV Intelligence") is a Texas limited liability company with its principal place of business located at 903 East 18th Street, Suite 217, Plano, Texas 75074.  MOV Intelligence is committed to advancing the current state of DRM and watermarking technologies.

4.       MOV Intelligence Global Licensing, LLC ("MOV Global Licensing") is a wholly-owned subsidiary of MOV Intelligence and assists in the licensing of MOV Intelligence's patents in territories outside the United States with a focus on the European Union (and the United Kingdom).[3]  MOV Intelligence Global Licensing, LLC is a corporation organized under the laws of Delaware.

5.       Rovi assigned the following patents to MOV Intelligence: U.S. Patent Nos. 7,299,209; 6,510,516; 6,802,006; 7,650,504; 6,813,640; 7,650,418; 7,200,230; 7,124,114; 6,381,367; 6,374,036; 6,360,000; 6,553,127; 6,701,062; 6,594,441; 7,764,790; 8,014,524; 6,931,536; and International Patent Nos. DE60047794; DE60148635.8; DE60211372.5; DE69901231.7-08; DK1047992; EP1047992; EP1303802; EP1332618; EP1444561; ES1047992; FR1047992; FR1303802; FR1332618; FR1444561; GB1047992; GB1303802; GB1332618; GB1444561; GR3040059; IE1047992; IE1444561; IT1047992; NL1047992; NL1444561; PT1047992; and SE1047992.

6.       MOV Intelligence has the right to sublicense the following international patent assets held by Rovi: AT1020077; AT1198959; AT1080584; ATE232346; AT1020077;

---

[2] *See* U.S. Patent Nos. 6,381,367; 7,764,790; 6,701,062; 8,014,524; German Patent Nos. DE60001837 and DE60001837D1; Chinese Patent No. CN1186941C; Canadian Patent No. CA2379992C; European Patent No. EP1198959B1; and Japanese Patent No. JP4387627B2.

[3] Wolfram Schrag, *EU-Patent steht auf der Kippe*, BR.COM NACHRICHTEN (August 2016).

AU729762; AU741281; AU753421; AU743639; AU714103; AU729762; AU2002351508; AU765747; AU2000263715; BE1020077; BE1198959; BE1020077; BE1080584; BE900498; BRPI 9812908-2; BR9709332.7; BRPI 9812908-2; CA2305254; CA2332546; CA2379992; CA2305254; CA2332548; CA2557859; CA2252726; CA2462679; CA2315212; CA2416304; CA2425115; CH1020077; CH1080584; CH900498; CH1020077; CH1047992; CNZL98809610.2; CNZL99806376.2; CNZL00811179.0; CNZL98809610.2; CNZL99806377.0; CNZL97194746.5; CNZL02820738.6; CNZL99802008.7; CNZL00819775.X; CNZL200510089437; DE69807102.608; DE60001837.7; DE69908352.4-08; DE69718907.4-08; DE69807102.608; DK1020077; DK1080584; DK1198959; DK1020077; DK900498; EP1020077; EP1198959; EP1080584; EP900498; EP1020077; ES1020077; ES1198959; ES1080584; ESES2191844; ES1020077; FI1020077; FI1080584; FI1020077; FI900498; FR1020077; FR1198959; FR1080584; FR900498; FR1020077; GB1020077; GB1198959; GB1080584; GB900498; GB1020077; GR3041381; GR3045620; GR3043304; GR3041381; HK1028696; HKHK1035625; HK1028696; HK1035282; HK1018562; HKHK1069234; HKHK1057115; HK1083653B; IE1020077; IE1198959; IE1020077; IE1080584; IE900498; IL135498; IL139543; IL148002; IL135498; IL139544; IN201442; IN220504; IN201442; IN207829; IT1020077; IT1080584; IT900498; IT1020077; JP4139560; JP4263706; JP4387627; JP4551617; JP4139560; JP4263706; JP3542557; JP4627809; JP4698925; JP4366037; JP4307069; KR374920; KR422997; KR761230; KR374920; KR362801; KR478072; KR689648; KR539987; KR752067; KR728517; KR593239; MX223464; MX231725; MX226464; MX223464; MX212991; MX214637; MX237690; MX240845; MYMY-123159-A; MYMY-123159-A; NL1020077; NL1198959; NL1080584; NL900498; NL1020077; NZ503280; NZ507789; NZ503280; NZ532122; PT1010077; PT1198959; PT1080584; PT900498; PT1010077; RU2195084; RU2216121; RU2251821; RU2195084; RU2208301; RU2258252; SE1020077; SE1198959; SE1080584; SE900498; SE1020077; SG71485; SG76965; SG86547; SG76964; SG71485; TWNI117461; TWNI-

124303; TWNI-130428; TWNI1600674; TWNI-162661; TWNI-202640; TWNI117461; TWNI-130754; and TWNI-184111.

**SONUS NETWORKS, INC.**

7.      On information and belief, Defendant Sonus Networks, Inc. ("Defendant"), is a Delaware corporation with its principal place of business at 4 Technology Park Drive, Westford, MA 01886.  Sonus Networks may be served through its registered agent Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.  On information and belief, Sonus Networks is registered to do business in the State of Texas, and has been since at least January 7, 2002.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      Upon information and belief, this Court has personal jurisdiction over Sonus Networks in this action because Sonus Networks has committed acts within the Eastern District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Sonus Networks would not offend traditional notions of fair play and substantial justice.  Sonus Networks, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patents-in-suit.  In addition, Defendant Sonus Networks is registered to do business in the State of Texas.

10.      Venue is proper in this district under 28 U.S.C. §§ 1391(b)-(d) and 1400(b). Sonus Networks is registered to do business in Texas, and upon information and belief, has transacted business in the Eastern District of Texas and has committed acts of direct and indirect infringement in the Eastern District of Texas.

## MOV INTELLIGENCE'S LANDMARK INVENTIONS

11.     The groundbreaking inventions in DRM and digital watermarking taught in the patents-in-suit were pioneered by Rovi.  Rovi, established in 1983 under the name Macrovision, was a trailblazing technology company focused on inventing and bringing to market fundamental technologies designed to allow producers and distributors of film and music to widely distribute their products while simultaneously protecting their art from unauthorized copying.[4] Macrovision's copy protection technology became so important to content creators that Congress specifically regulated the manufacture and sale of technology that was incompatible with Macrovision's copy protection technology.  *See* 17 U.S.C. § 1201(k)(1) ("unless such recorder conforms to the automatic gain control copy control technology").[5]  Rovi broadened its focus to include copy protection and DRM for other media,[6] including computer executables, firmware, operating system images, watermarking, and encryption.

12.     MOV Intelligence's patent portfolio, which includes more than 233 issued patents worldwide, is a direct result of Rovi's substantial investment in research and development.  The asserted MOV Intelligence patents are reflective of this history of innovation, embodying a number of firsts in the development of DRM and watermarking technologies.

13.     MOV Intelligence long-term financial success depends in part on its ability to establish, maintain, and protect its proprietary technology through patents.  Defendant's

---

[4] Aljean Harmetz, *Cotton Club Cassettes Coded to Foil Pirates*, N.Y. TIMES (April 24, 1985).

[5] *See also* David Nimmer, *Back from the Future: A Proleptic Review of the Digital Millennium Copyright Act*, 16 BERKELEY TECH. L.J. 855, 862 (2001) (The DMCA "contains a welter of corporation-specific features, relating to Macrovision Corp.  The features in question relate to section 1201's controls on consumer analog devices.") (citations omitted).

[6] *See* Michael Arnold et al., TECHNIQUES AND APPLICATIONS OF DIGITAL WATERMARKING AND CONTENT PROTECTION 203 (2002) (Describing Rovi's Cactus Data Shield product which by 2002 had been used in over 100 million compact discs.  "This scheme [Rovi Cactus Data Shield] operates by inserting illegal data values instead of error-correcting codes."); *see also Rovi SafeDisc Copy Protection Overview*, MACROVISION CORPORATION DATASHEET at 2 (1999) ("SafeDisc incorporates a unique authentication technology that prevents the re-mastering of CD-ROM titles and deters attempts to make unauthorized copies.  The SafeDisc authentication process ensures that consumers will only be able to play original discs.  The user is forced to purchase a legitimate copy."); Kirby Kish, MACROSAFE SYSTEM: A SOLUTION FOR SECURE DIGITAL MEDIA DISTRIBUTION at 7 (January 2002) (showing the architecture of the MacroSafe system and use of a DRM Server and Key Escrow Server).

infringement presents significant and ongoing damage to MOV Intelligence's business.  Sonus Networks, in an effort to expand its product base and profit from the sale of patented technology, has chosen to incorporate MOV Intelligence's fundamental technology without a license or payment.

### THE ASSERTED PATENTS

#### U.S. PATENT NO. 6,510,516

14.     U.S. Patent No. 6,510,516 (the "'516 patent"), entitled "System and Method for Authenticating Peer Components," was filed on January 15, 1999, and claims priority to January 16, 1998.  MOV Intelligence is the owner by assignment of the '516 patent.  A true and correct copy of the '516 patent is attached hereto as Exhibit A.  The '516 patent claims specific methods and systems for controlling the usage of data objects in component object systems.  According to the invention, each data object includes a peer list that defines one or more peer data objects that are required by the data object.  Upon receipt of a data object, the system verifies the integrity of the data object.  Further, the system identifies the integrity of the peer data objects.

15.     The '516 patent family has been cited by over 108 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '516 patent as relevant prior art:

- America Online, Inc.
- LG Electronics, Inc.
- Microsoft Corporation
- Samsung Electronics Co., Ltd.
- First Data Corporation
- International Business Machines Corporation
- Pixar, Inc. (now a subsidiary of the Walt Disney Company)
- Adobe Systems Incorporated
- The Western Union Company
- Verizon Communications, Inc.
- JPMorgan Chase & Co.
- Electronics and Telecommunications Research Institute (ETRI)
- Siemens Medical Solutions USA, Inc.

**U.S. PATENT NO. 7,650,418**

16.     U.S. Patent No. 7,650,418 (the "'418 patent"), entitled "System and Method for Controlling the Usage of Digital Objects," was filed on August 26, 2004, and claims priority to December 8, 1998.  MOV Intelligence is the owner by assignment of the '418 patent.  A true and correct copy of the '418 patent is attached hereto as Exhibit B.  The '418 patent claims specific methods and systems for controlling the usage of digital objects wherein control rights associated with a digital data object activate an external control object and an intercept application to intercept and monitor communications between a hosting application and a document server application associated with the creation of the digital data object.  The '418 patent teaches the use of intercepting and monitoring functions without affecting or changing the hosting application or the document server application.  The external control object activates an intercept application which mimics the functions of the document server application and performs user actions on the digital data object as authorized by the external control object according to the control rights associated with the digital object.  By intercepting and monitoring user actions on a digital data object, the invention can control access and use of the digital data object.

17.     The '418 patent family has been cited by over 47 issued United States patents and published patent applications as relevant prior art.  Specifically, patents issued to the following companies have cited the '418 patent as relevant prior art:

- Google, Inc.
- Fisher-Rosemount Systems, Inc.
- Knoa Software, Inc.
- Securewave S.A.
- International Business Machines Corporation
- Ab Initio Technology LLC
- The Invention Science Fund I, LLC
- Searete LLC
- Microsoft Corporation

18.     The '418 patent claims a technical solution to a problem unique to the transmission of digital information over a network: reliably controlling the usage of digital

objects wherein the system and/or methods intercept the communication between two

applications communicating over a computer network.

**U.S. PATENT NO. 7,124,114**

19.     U.S. Patent No. 7,124,114 (the "'114 patent"), entitled "Method and Apparatus

for Determining Digital A/V Content Distribution Terms Based on Detected Piracy Levels," was

filed on November 9, 2000.  MOV Intelligence is the owner by assignment of the '114 patent.  A

true and correct copy of the '114 patent is attached hereto as Exhibit C.  The '114 patent claims

specific methods and systems for distributing copyrighted material over a computer network.

Specifically, the '114 patent teaches the providing of protected material to a prospective recipient

according at least in part to information of unauthorized copying of other protected material

previously provided to the prospective recipient; and providing or withholding a copy of the

protected material to the prospective recipient in accordance with the terms.  The '114 patent

also discloses the use of a first set of program code which serves to ascertain terms for providing

a protected material to a prospective recipient according at least in part to information of

unauthorized copying of other protected material previously provided to the prospective

recipient.  The first set of program code also serves to provide or withhold a copy of the

protected material to or from the prospective recipient in accordance with the terms.

20.     The '114 patent family has been cited by over 39 issued United States patents and

published patent applications as relevant prior art.  Specifically, patents issued to the following

companies have cited the '114 patent as relevant prior art:

- Google, Inc.
- NBCUniversal Media, Inc.
- Digimarc Corporation
- Hewlett-Packard Development Company, L.P.
- Aigo Research Institute of Image Computing Co., Ltd.
- AT&T Intellectual Property I, L.P.
- General Electric Company
- The Nielsen Company (US), LLC
- Sca Ipla Holdings, Inc.
- Thomson Licensing, Inc.
- Fujitsu Limited

21.     The '114 patent claims a technical solution to a problem unique to the transmission of digital information over a network: preventing the unauthorized copying of digital content.  The patent teaches the use of a server that manages access to content according to terms determined from information stored in a database of prior unauthorized copying attributed to that recipient.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 6,510,516

22.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

23.     Sonus Networks designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for authenticating peer data objects.

24.     Sonus Networks designs, makes, sells, offers to sell, imports, and/or uses the Sonus WebRTC Service Solution Release 1.0, Sonus WebRTC Service Solution Release 1.1, Sonus WebRTC Service Solution Release 1.2 (collectively, the "Sonus Networks '516 Product(s)").

25.     The Sonus Networks '516 Products include the Sonus Session Border Controller (SBC) and Sonus WebRTC Software Development Kit (WRTC SDK).

26.     On information and belief, one or more Sonus Networks subsidiaries and/or affiliates use the Sonus Networks '516 Products in regular business operations.

27.     On information and belief, one or more of the Sonus Networks '516 Products include authentication technology.

28.     On information and belief, one or more of the Sonus Networks '516 Products enable authenticating the identity of peers to a data object.

29.     On information and belief, the Sonus Networks '516 Products are available to businesses and individuals throughout the United States.

30.     On information and belief, the Sonus Networks '516 Products are provided to businesses and individuals located in the Eastern District of Texas.

31.     On information and belief, the Sonus Networks '516 Products enable first data objects to contain or be linked to a description of one or more peer data objects that are required to be connected to the first data object before the data object can be accessed by the peer data objects.

32.     On information and belief, the Sonus Networks '516 Products enable the use of a digital signature that identifies the provider of a data object.

33.     On information and belief, the Sonus Networks '516 Products contain systems and methods that comprise reading from a data object a description of one or more peer data objects that is required for use of the data object.

34.     On information and belief, the Sonus Networks '516 Products contain functionality for determining whether the data object is authorized to communicate with one or more peer data objects.

35.     On information and belief, the Sonus Networks '516 Products contain the capability to determine if the data object is authorized to communicate with one or more peer data objects.

36.     On information and belief, the Sonus Networks '516 Products are capable of controlling the connection of the peer data objects to the data object.

37.     On information and belief, the Sonus Networks '516 Products comprise systems and methods that connect a data object to peer data objects based upon authorization being granted.  Moreover, when authorization is granted for the connection of a data object to peer data objects the peer data objects can communicate with the data object and the data object can communicate with the peer data objects.

38.     On information and belief, the Sonus Networks '516 Products support authenticating a data object where the data object is encrypted.

39.     On information and belief, Sonus Networks has directly infringed and continues to directly infringe the '516 patent by, among other things, making, using, offering for sale, and/or selling data object authentication and verification technology, including but not limited to the Sonus Networks '516 Products, which include infringing verification and authentication technologies.  Such products and/or services include, by way of example and without limitation, the Sonus WebRTC Service Solution Release 1.0, Sonus WebRTC Service Solution Release 1.1, Sonus WebRTC Service Solution Release 1.2 products.

40.     By making, using, testing, offering for sale, and/or selling authentication and verification products and services, including but not limited to the Sonus Networks '516 Products, Sonus Networks has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '516 patent, including at least claims 1, 17, and 20, pursuant to 35 U.S.C. § 271(a).

41.     On information and belief, Sonus Networks also indirectly infringes the '516 patent by actively inducing infringement under 35 USC § 271(b).

42.     On information and belief, Sonus Networks had knowledge of the '516 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Sonus Networks knew of the '516 patent and knew of its infringement, including by way of this lawsuit.

43.     On information and belief, Sonus Networks intended to induce patent infringement by third-party customers and users of the Sonus Networks '516 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Sonus Networks specifically intended and was aware that the normal and customary use of the accused products would infringe the '516 patent.  Sonus Networks performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '516 patent and with the knowledge that the induced acts would constitute infringement.  For example, Sonus Networks provides the Sonus Networks '516 Products that have the capability of operating in a

manner that infringe one or more of the claims of the '516 patent, including at least claims 1, 17, and 20, and Sonus Networks further provides documentation and training materials that cause customers and end users of the Sonus Networks '516 Products to utilize the products in a manner that directly infringe one or more claims of the '516 patent.  By providing instruction and training to customers and end-users on how to use the Sonus Networks '516 Products in a manner that directly infringes one or more claims of the '516 patent, including at least claims 1, 17, and 20, Sonus Networks specifically intended to induce infringement of the '516 patent.  On information and belief, Sonus Networks engaged in such inducement to promote the sales of the Sonus Networks '516 Products, e.g., through Sonus Networks user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '516 patent.  Accordingly, Sonus Networks has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '516 patent, knowing that such use constitutes infringement of the '516 patent.

44.     The '516 patent is well-known within the industry as demonstrated by the over 108 citations to the '516 patent family in issued patents and published patent applications assigned to technology companies and academic institutions (*e.g.*, LG Electronics, Inc. and Siemens AG).  Several of Sonus Networks' competitors have paid considerable licensing fees for their use of the technology claimed by the '516 patent.  In an effort to gain an advantage over Sonus Networks' competitors by utilizing the same licensed technology without paying reasonable royalties, Sonus Networks infringed the '516 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

45.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '516 patent.

46.     As a result of Sonus Networks' infringement of the '516 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for

Sonus Networks' infringement, but in no event less than a reasonable royalty for the use made of the invention by Sonus Networks together with interest and costs as fixed by the Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 7,650,418

47.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

48.     Sonus Networks designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for controlling the usage of digital objects.

49.     Sonus Networks designs, makes, sells, offers to sell, imports, and/or uses the Sonus WebRTC Service Solution Release 1.0, Sonus WebRTC Service Solution Release 1.1, Sonus WebRTC Service Solution Release 1.2 (collectively, the "Sonus Networks '418 Product(s)").

50.     The Sonus Networks '418 Products include the Sonus Session Border Controller (SBC) and Sonus WebRTC Software Development Kit (WRTC SDK).

51.     On information and belief, one or more Sonus Networks subsidiaries and/or affiliates use the Sonus Networks '418 Products in regular business operations.

52.     On information and belief, one or more of the Sonus Networks '418 Products comprise systems and methods for intercepting a communication between two applications in a computer environment.

53.     On information and belief, one or more of the Sonus Networks '418 Products enable intercepting a communication between two applications where the first and second application communicate via a predefined communications channel.

54.     On information and belief, the Sonus Networks '418 Products are available to businesses and individuals throughout the United States.

55.     On information and belief, the Sonus Networks '418 Products are provided to businesses and individuals located in the Eastern District of Texas.

56.     On information and belief, the Sonus Networks '418 Products include systems and methods that comprise a discreet intercept technology component (DIT) and a dynamic connection logic component (DCL).

57.     On information and belief, the Sonus Networks '418 Products comprise systems and methods wherein the DIT component permits the interception of communication and data flows between two or more components in component-based applications.

58.     On information and belief, the Sonus Networks '418 Products enable the DIT component to be inserted between two digital components.  The DIT then intercepts the data and communications, thereby controlling the communication between the two digital components.

59.     On information and belief, the Sonus Networks '418 Products comprise systems and methods that enable a control object capable of specifying a dynamic control logic depending on the intercepted data communication.

60.     On information and belief, the Sonus Networks '418 Products enable applying by the intercept application the dynamic control logic specified by the control object on the digital object.

61.     On information and belief, the Sonus Networks '418 Products contain functionality for intercepting data communication between a first application and a second application within a computer network without changing the functionality of the first application and the second application.

62.     On information and belief, Sonus Networks has directly infringed and continues to directly infringe the '418 patent by, among other things, making, using, offering for sale, and/or selling digital rights technology, including but not limited to the Sonus Networks '418 Products, which include infringing technology for controlling the usage of data objects.  Such products and/or services include, by way of example and without limitation, the Sonus WebRTC Service Solution Release 1.0, Sonus WebRTC Service Solution Release 1.1, Sonus WebRTC Service Solution Release 1.2 products.

63.     By making, using, testing, offering for sale, and/or selling digital rights management products and services, including but not limited to the Sonus Networks '418 Products, Sonus Networks has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, pursuant to 35 U.S.C. § 271(a).

64.     On information and belief, Sonus Networks also indirectly infringes the '418 patent by actively inducing infringement under 35 USC § 271(b).

65.     On information and belief, Sonus Networks had knowledge of the '418 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Sonus Networks knew of the '418 patent and knew of its infringement, including by way of this lawsuit.

66.     On information and belief, Sonus Networks intended to induce patent infringement by third-party customers and users of the Sonus Networks '418 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Sonus Networks specifically intended and was aware that the normal and customary use of the accused products would infringe the '418 patent.  Sonus Networks performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '418 patent and with the knowledge that the induced acts would constitute infringement.  For example, Sonus Networks provides the Sonus Networks '418 Products that have the capability of operating in a manner that infringe one or more of the claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, and Sonus Networks further provides documentation and training materials that cause customers and end users of the Sonus Networks '418 Products to utilize the products in a manner that directly infringe one or more claims of the '418 patent.  By providing instruction and training to customers and end-users on how to use the Sonus Networks '418 Products in a manner that directly infringes one or more claims of the '418 patent, including at least claims 1, 2, 4, 7, 8, and 9, Sonus Networks specifically intended to induce infringement of the '418 patent.

On information and belief, Sonus Networks engaged in such inducement to promote the sales of the Sonus Networks '418 Products, e.g., through Sonus Networks user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '418 patent.  Accordingly, Sonus Networks has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '418 patent, knowing that such use constitutes infringement of the '418 patent.

67.     The '418 patent is well-known within the industry as demonstrated by the over 47 citations to the '418 patent family in issued patents and published patent applications assigned to technology companies and academic institutions (*e.g.*, Google, Inc. and International Business Machines Corporation).  Several of Sonus Networks' competitors have paid considerable licensing fees for their use of the technology claimed by the '418 patent.  In an effort to gain an advantage over Sonus Networks' competitors by utilizing the same licensed technology without paying reasonable royalties, Sonus Networks infringed the '418 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

68.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '418 patent.

69.     As a result of Sonus Networks' infringement of the '418 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Sonus Networks' infringement, but in no event less than a reasonable royalty for the use made of the invention by Sonus Networks together with interest and costs as fixed by the Court.

## COUNT III
## INFRINGEMENT OF U.S. PATENT NO. 7,124,114

70.     MOV Intelligence references and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

71.     Sonus Networks designs, makes, uses, sells, and/or offers for sale in the United States products and/or services for managing the distribution of digital content and preventing unauthorized access to protected digital content.

72.     Sonus Networks designs, makes, sells, offers to sell, imports, and/or uses the Sonus Session Border Controller Software Edition (SWe), Sonus SBC 1000, Sonus SBC 2000, Sonus SBC 5100, Sonus SBC 5210, Sonus SBC 7000, and Sonus SBC 9000 (collectively, the "Sonus Networks '114 Product(s)").

73.     On information and belief, one or more Sonus Networks subsidiaries and/or affiliates use the Sonus Networks '114 Products in regular business operations.

74.     On information and belief, one or more of the Sonus Networks '114 Products include content protection and content access technology.

75.     On information and belief, one or more of the Sonus Networks '114 Products enable providing or withholding access to digital content is accordance with digital rights management protection terms.

76.     On information and belief, the Sonus Networks '114 Products are available to businesses and individuals throughout the United States.

77.     On information and belief, the Sonus Networks '114 Products are provided to businesses and individuals located in the Eastern District of Texas.

78.     On information and belief, the Sonus Networks '114 Products enable the distribution of protected digital data.

79.     On information and belief, the Sonus Networks '114 Products comprise systems and methods wherein the Sonus Networks '114 Products ascertain terms for providing protected data to a prospective requestor according at least in part to information of unauthorized copying of other protected material previously provided to said prospective requestor.

80.     On information and belief, the Sonus Networks '114 Products comprise systems and methods that provide authorization to allow access or deny access to protected digital data based on ascertained terms.

81.     On information and belief, Sonus Networks has directly infringed and continues to directly infringe the '114 patent by, among other things, making, using, offering for sale, and/or selling digital content protection technology, including but not limited to the Sonus Networks '114 Products, which include infringing digital rights management technologies.  Such products and/or services include, by way of example and without limitation, the Sonus Session Border Controller Software Edition (SWe), Sonus SBC 1000, Sonus SBC 2000, Sonus SBC 5100, Sonus SBC 5210, Sonus SBC 7000, and Sonus SBC 9000.

82.     By making, using, testing, offering for sale, and/or selling digital rights management and access control products and services, including but not limited to the Sonus Networks '114 Products, Sonus Networks has injured MOV Intelligence and is liable to MOV Intelligence for directly infringing one or more claims of the '114 patent, including at least claims 1, 21, 41, and 52, pursuant to 35 U.S.C. § 271(a).

83.     On information and belief, Sonus Networks also indirectly infringes the '114 patent by actively inducing infringement under 35 USC § 271(b).

84.     On information and belief, Sonus Networks had knowledge of the '114 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Sonus Networks knew of the '114 patent and knew of its infringement, including by way of this lawsuit.

85.     On information and belief, Sonus Networks intended to induce patent infringement by third-party customers and users of the Sonus Networks '114 Products and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement.  Sonus Networks specifically intended and was aware that the normal and customary use of the accused products would infringe the '114 patent.  Sonus Networks performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '114 patent and with the knowledge that the induced acts would constitute infringement.  For example, Sonus Networks provides the Sonus Networks '114 Products that have the capability of operating in a

manner that infringe one or more of the claims of the '114 patent, including at least claims 1, 21, 41, and 52, and Sonus Networks further provides documentation and training materials that cause customers and end users of the Sonus Networks '114 Products to utilize the products in a manner that directly infringe one or more claims of the '114 patent.  By providing instruction and training to customers and end-users on how to use the Sonus Networks '114 Products in a manner that directly infringes one or more claims of the '114 patent, including at least claims 1, 21, 41, and 52, Sonus Networks specifically intended to induce infringement of the '114 patent. On information and belief, Sonus Networks engaged in such inducement to promote the sales of the Sonus Networks '114 Products, e.g., through Sonus Networks user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '114 patent.  Accordingly, Sonus Networks has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '114 patent, knowing that such use constitutes infringement of the '114 patent.

86.     The '114 patent is well-known within the industry as demonstrated by the over 39 citations to the '114 patent family in issued patents and published patent applications assigned to technology companies and academic institutions (*e.g.*, Aigo Research Institute of Image Computing Co., Ltd. and General Electric Company).  Several of Sonus Networks' competitors have paid considerable licensing fees for their use of the technology claimed by the '114 patent. In an effort to gain an advantage over Sonus Networks' competitors by utilizing the same licensed technology without paying reasonable royalties, Sonus Networks infringed the '114 patent in a manner best described as willful, wanton, malicious, in bad faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate.

87.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '114 patent.

88.     As a result of Sonus Networks' infringement of the '114 patent, MOV Intelligence has suffered monetary damages, and seeks recovery in an amount adequate to compensate for

Sonus Networks' infringement, but in no event less than a reasonable royalty for the use made of the invention by Sonus Networks together with interest and costs as fixed by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff MOV Intelligence respectfully requests that this Court enter:

A.     A judgment in favor of Plaintiff MOV Intelligence that Sonus Networks has infringed, either literally and/or under the doctrine of equivalents, the '516, '418, and '114 patent;

B.     An award of damages resulting from Sonus Networks' acts of infringement in accordance with 35 U.S.C. § 284;

C.     A judgment and order finding that Defendant's infringement was willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or characteristic of a pirate within the meaning of 35 U.S.C. § 284 and awarding to Plaintiff enhanced damages.

D.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendant.

E.     Any and all other relief to which MOV Intelligence may show itself to be entitled.

### JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MOV Intelligence requests a trial by jury of any issues so triable by right.

Dated:  October 6, 2016

Respectfully submitted,

/s/  Dorian S. Berger _____
Elizabeth L. DeRieux (TX Bar No. 05770585)
D. Jeffrey Rambin (TX Bar No. 00791478)
CAPSHAW DERIEUX, LLP
114 E. Commerce Ave.
Gladewater, Texas 75647
Telephone: 903-845-5770
E-mail: ederieux@capshawlaw.com
E-mail: jrambin@capshawlaw.com


Dorian S. Berger (CA SB No. 264424)
Daniel P. Hipskind (CA SB No. 266763)
BERGER & HIPSKIND LLP
1880 Century Park East, Ste. 815
Los Angeles, CA 95047
Telephone: 323-886-3430
Facsimile: 323-978-5508
E-mail: dsb@bergerhipskind.com
E-mail: dph@bergerhipskind.com

*Attorneys for Marking Object Virtualization
Intelligence, LLC*